**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Rocky Lane, | CV-16-04231-PHX-DGC (DMF) |
| Petitioner, | CR-12-01419-PHX-DGC |
| v. | **ORDER** |
| United States of America, | |
| Respondent. | |

Petitioner Michael Rocky Lane filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 based on ineffective assistance of counsel. Doc. 1. Magistrate Judge Charles R. Pyle has issued a Report and Recommendation ("R&R") suggesting that the Court deny the motion. Doc. 23. Petitioner filed objections to the R&R, the government responded, and Petitioner filed a reply. Docs. 24, 25, 31. For the reasons stated below, the Court will deny the objections and adopt Judge Pyle's recommendation.

**I.     Background.**

On March 23, 2013, Petitioner was charged on three counts in a second superseding indictment (the "Indictment"), along with multiple codefendants. Doc. 23 at 2. On July 19, 2013, Petitioner was found guilty by a jury on all three counts: Count One, conspiracy to manufacture or distribute controlled substance analogues MDPV, a-PVP, a-PBP, Pentedrone, and Pentylone in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(c); Count Three, conspiracy to manufacture controlled substance analogues MPPP,

a-PVP, a-PBP, Pentedrone, and Pentylone in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(c); and Count Five, possession or aiding and abetting in the possession with intent to distribute controlled substance analogues a-PVP, Pentedrone, and MPPP, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(c), and 18 U.S.C. § 2. *Id.*; Case No. 2:12-cr-01419-PHX-DGC, Doc. 676 at 3-5. Petitioner was sentenced to 180 months in prison on each count, to be served concurrently. Doc. 23 at 3.

On December 2, 2016, Petitioner, through counsel, filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, alleging five grounds for relief. Doc. 1. Each ground claims ineffective assistance based on counsel's failure to argue that: (1) Counts One and Three are multiplicitous; (2) *McFadden v. United States*, 135 S. Ct. 2298 (2015), changed the knowledge requirement for analogues and was not properly applied to this case; (3) the pharmacological effects and potency of pyrovalerone are more closely related to the analogues in this case and should have been used for sentencing purposes; (4) the standard of proof at sentencing should have been clear and convincing evidence; and (5) the Analogue Act is unconstitutionally vague pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015). *Id.* at 5-9; Doc. 7. Judge Pyle rejected each of these grounds on the merits. Doc. 23 at 7-30. Petitioner objects to Judge Pyle's recommendations and reargues the merits of each claim. Doc. 24 at 1-15.

## II. Standard of Review.

The Court must undertake a de novo review of those portions of the R&R to which specific objections are made. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). The portions of the R&R to which Petitioner does not specifically object will be adopted without further discussion. *Id.* The Court will not review generalized objections, nor undertake a global reevaluation of the merits of Petitioner's grounds for relief. *See Warling v. Ryan*, No. CV 12-01396-PHX-DGC, 2013 WL 5276367, at *2 (D. Ariz. Sept. 19, 2013); *Reyna-Tapia*, 328 F.3d at 1121.

/ / /

**III. Discussion.**

All of Petitioner's § 2255 claims assert that his trial counsel, appellate counsel, or both rendered ineffective assistance. The Supreme Court set out the relevant test in *Strickland v. Washington*, 466 U.S. 668 (1984). "To establish ineffective assistance of counsel under *Strickland*, a prisoner must demonstrate *both*: (1) that counsel's performance was deficient, *and* (2) that the deficient performance prejudiced his defense." *Miles v. Ryan*, 713 F.3d 477, 486 (9th Cir. 2013) (emphasis in original) (citing *Strickland*, 466 U.S. at 688-93). Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and attorneys are afforded "wide latitude . . . in making tactical decisions." *Strickland*, 466 U.S. at 689. The reasonableness of counsel's performance is judged under an objective standard. *United States v. Davis*, 36 F.3d 1424, 1433 (9th Cir. 1994).

"A defendant is prejudiced by counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Clark v. Arnold*, 769 F.3d 711, 725 (9th Cir. 2014) (quoting *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome' of a proceeding." *Id.* Petitioner "need not prove 'counsel's actions more likely than not altered the outcome,' but rather he must demonstrate that '[t]he likelihood of a different result [is] substantial, not just conceivable.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011)).

**A. Multiplicitous Claims.**

Ground One asserts that Petitioner's trial and appellate counsel were ineffective for failing to argue that Counts One and Three arise under a single conspiracy and are therefore multiplicitous. Doc. 23 at 7. Judge Pyle found that the Counts are not multiplicitous. *Id.* at 8. Petitioner argues that a correct analysis shows there was only one conspiracy. Doc. 24 at 1-5.

The Fifth Amendment's Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const.

amend. V. It prohibits "the government from dividing a single conspiracy into separate charges and pursuing successive prosecutions against a defendant." *United States v. Stoddard*, 111 F.3d 1450, 1454 (9th Cir. 1997). "[T]o determine whether two conspiracy counts charge the same offense and so place the defendant in double jeopardy," the Ninth Circuit considers five factors: (1) the differences in time periods covered by the conspiracies; (2) the location where the conspiracies occurred; (3) the individuals charged as coconspirators; (4) the overt acts committed; and (5) the violated statutes. *Id.* "No single factor in the . . . analysis controls the determination of whether there was a single conspiracy; after consideration of all, the question is whether there was more than one agreement." *United States v. Guzman*, 852 F.2d 1117, 1121 (9th Cir. 1988).

**1. Time Periods.**

Count One charged a conspiracy from early 2011 to July 2012. Doc. 23 at 8-9. Count Three charged a conspiracy from October 2011 through July 25, 2012. *Id.* at 9. Petitioner argues that the time periods favor a finding of a single conspiracy. Doc. 24 at 2. The time period of a conspiracy, however, "is determined not by the dates alleged in the indictment, but by the evidence adduced at trial." *Guzman*, 852 F.2d at 1120.

Nicholas Zizzo, one of Petitioner's coconspirators, testified at trial that he started the company Consortium Distribution in early 2011 and that Petitioner began to work for him in mid-2011. Doc. 23 at 9. Another coconspirator, Colin Stratford, testified that he had a discussion with Petitioner in September 2011 about developing a competing substance similar to that sold by Consortium Distribution, but under Petitioner's new company, Dynamic Distribution. *Id.* at 9-10. Zizzo testified that he "kicked [Petitioner] out" of Consortium in October 2011 because, among other reasons, Petitioner was developing his own competing product. *Id.* The Court agrees with Judge Pyle that the evidence supports a finding of two conspiracies: one under Consortium from mid-2011 through October 2011, and a second under Dynamic from October 2011 through July 2012. *Id.* at 10.

///

### 2. Location.

Petitioner argues that the second factor supports a finding of one conspiracy because both alleged conspiracies took place in the area of Phoenix, Arizona. Doc. 24 at 2. Consortium Distribution was first based out of the back of Zizzo's brother's smoke shop and then moved to other locations in the Phoenix-metro area. Doc. 23 at 10. Consortium had facilities at 10729 North 19th Avenue and 1540 West Hatcher road in Phoenix. Case No. 2:12-cr-01419-PHX-DGC, Doc. 143 at 4. Dynamic Distribution, by contrast, was first based out of Petitioner's garage in Cave Creek, Arizona, and then moved to a warehouse in Tempe, Arizona. Doc. 23 at 10. The two conspiracies may have been in the same general area, but they were in different locations. *See Guzman*, 852 F.2d at 1120 (finding separate conspiracies where both occurred in California, but in different areas of the state). This factor suggests two separate conspiracies.

### 3. Participants.

Petitioner argues that the third factor favors a finding of one conspiracy because there is an overlap in participants between Counts One and Three. Doc. 24 at 2. Count One charged Zizzo as the owner of Consortium Distribution and Benjamin Lowenstein, Petitioner, and Clinton Strunk as coconspirators. Doc. 23 at 11. Count Three charged Petitioner as the owner of Dynamic Distribution, with Andrew Freeman, Vincent Collura, David Titus, and Clinton Strunk as coconspirators. *Id.* at 9. The only overlap between Counts One and Three are Petitioner and Clinton Strunk. Additionally, Petitioner's roles in the two conspiracies were different – he was charged as a sales manager with Consortium, but as the founding owner of Dynamic. *Id.* at 11; *See Stoddard*, 111 F.3d at 1455 (finding that the third factor indicates the existence of separate conspiracies if the roles of overlapping members are different). The third factor indicates two conspiracies.

### 4. Overt Acts.

Petitioner argues that this factor indicates the existence of one conspiracy because both Counts allege the same overt acts using the same analogue substances. Doc. 24 at 3. Count One charges Zizzo, Petitioner, and coconspirators involved in Consortium with

illegally "manufacturing or distributing 'bath salts' or 'designer drugs' . . . that contained controlled substance analogues . . . intended to be consumed or ingested by persons in violation of the Analogue Act." Doc. 23 at 12. Count One describes the products as containing MDPV, a-PVP, a-PBP, pentylone, and pentedrone. *Id.* Count Three charges Petitioner and coconspirators involved in Dynamic Distribution with the same overt acts, manufacturing and distributing "bath salt" products containing controlled substance analogues for human consumption. *Id.* Count Three describes the products as containing a-PVP, a-PBP, pentedrone, pentylone, and MPPP. *Id.* While the substances used in the Counts are slightly different, the Court agrees with the R&R and Petitioner that the overt acts are substantially similar. This factor weighs in favor of finding one conspiracy.

### 5. Statutes Violated.

The two conspiracy counts allege violations of the same statutes, 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(c). *Id.* at 2. In the Ninth Circuit, when two conspiracies allegedly violate the same statute, courts consider "whether the goals of the two conspiracies were similar." *Montgomery v. Buxton*, 150 F.3d 983, 991 (9th Cir. 1998). The R&R found that the goal in both conspiracies was the same – to sell compounds using analogue substances to get the user "high." Doc. 23 at 13.

### 6. Conclusion.

While the two conspiracies involved similar overt acts and goals, they differed in time, location, and participants. Judge Pyle correctly found that the evidence points to two separate conspiracies, one at Consortium Distribution, owned and operated by Zizzo, and the other at Dynamic Distribution, owned and operated by Petitioner. Thus, even if Petitioner's counsel erred in not arguing that Counts One and Three are multiplicitous, Petitioner has not shown prejudice.

### B. *McFadden* Knowledge Requirement.

Petitioner argues that his trial and appellate counsel were ineffective for not arguing that the Supreme Court decision *McFadden v. United States*, 135 S. Ct. 2298 (2015), "changed the knowledge requirement for analogues" and should be applied

retroactively to this case. Doc. 23 at 14. Petitioner argues that *McFadden* requires the government to prove Petitioner knew "both the chemical structure of the analogue and the chemical structure of the controlled substance," and the jury instructions given in his case did not meet that standard. *Id.* at 14. Judge Pyle found that the jury instructions were consistent with the knowledge requirement set forth in *McFadden* and therefore Petitioner did not receive ineffective assistance of counsel. Doc. 23 at 14-21.

Under *McFadden*, "the Government must prove that a defendant knew that the substance with which he was dealing was 'a controlled substance,' even in prosecutions involving an analogue." 135 S. Ct. at 2305. This knowledge requirement can be established in two ways: (1) evidence that the defendant knew that the substance with which he was dealing is a controlled substance, or (2) evidence that the defendant knew the specific analogue he was dealing with, even if he did not know of its legal status as an analogue. *Id.* To establish the second method of knowledge, the government must prove the defendant knew that the substance had a chemical structure substantially similar to the structure of a controlled substance; and had a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the effect of a controlled substance, or was represented or intended to have that effect. *Id.* This proof can be made through direct or circumstantial evidence. *Id.* at 2304 n.1.

In Petitioner's case, the jury instructions on Counts One and Three required the jury to find that he "knew that one or more of the substances that were the object of the conspiracy were controlled substance analogues." Case No. 2:12-cr-01419-PHX-DGC, Doc. 461 at 22, Jury Instruction #19. To make this showing, the government had to prove that Petitioner:

> 1. Knew that one or more of the alleged analogues had a chemical structure substantially similar to substances which are listed in Schedules I or II of the Controlled Substance Act; and

> 2. Either (a) that he knew one or more of the alleged analogues had a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect of one or more of the controlled substance identified in Part I above; or (b) that he represented or intended that one or more of the alleged analogues had a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect of one or more of the controlled substances identified in Part 1 above.

*Id.*

These instructions comport with *McFadden*. The instructions also allowed the jury to consider both direct and circumstantial evidence, consistent with *McFadden*. *Id.*

To the extent that Petitioner argues his trial counsel rendered ineffective assistance by failing to present evidence of Petitioner's ignorance of the law, his reading of *McFadden* is incorrect. *See McFadden*, 135 S. Ct. at 2304 ("[I]gnorance of the law is typically no defense to criminal prosecution."); *United States v. Beltran-Flores*, 707 F. App'x 495, 496 (9th Cir. 2017) (finding that *McFadden* "does not imply that the government must prove that a defendant knew that their conduct was illegal" because ignorance of the law continues to be no excuse). Petitioner cannot show that he was prejudiced by his counsel not arguing on appeal that the jury instructions were inconsistent with *McFadden*. They were not.

### C. Pyrovalerone Effects and Potency.

At sentencing, the Court used methcathinone, a Schedule I controlled substance, to determine Petitioner's base offense level under the guidance in the United States Sentencing Guidelines (U.S.S.G) 2D1.1, application note 6. Doc. 23 at 21-23. Petitioner argues that his counsel was ineffective for failing to present evidence that pyrovalerone, a Schedule V controlled substance, is the most closely related substance for determining his base offense level. *Id.* at 21. Citing an abundance of federal cases, including the

Ninth Circuit's decision affirming Petitioner's sentence, Judge Pyle concluded the Court properly applied the guidance from U.S.S.G. 2D1.1, and that Petitioner did not receive ineffective assistance of counsel on this ground. *Id.* at 23-24. The Court agrees with Judge Pyle's recommendation. Petitioner's citation to "Amendment 679" to application note 6 does not change this analysis, nor does it show that Petitioner's counsel was ineffective. Doc. 24 at 10.

### D. Standard of Proof.

Petitioner argues that neither his trial nor appellate counsel argued that the standard of proof applicable to his sentencing should have been clear and convincing evidence. Doc. 23 at 25. Petitioner argues that *United States v. Hopper*, 177 F.3d 824 (9th Cir. 1999), and *United States v. Valensia*, 222 F.3d 1173 (9th Cir. 2000), *vacated on other grounds*, 532 U.S. 901 (2001), mandate a higher standard of proof in his case. Judge Pyle correctly found that neither case applies to Petitioner's sentencing. Doc. 23 at 28-29. Both *Hopper* and *Valensia* involved sentence enhancements based on uncharged conduct. *See Valensia*, 222 F.3d at 1182 ("[T]he Due Process Clause requires the application of a clear and convincing evidence standard when an enhancement based upon uncharged conduct has an extremely disproportionate effect on the length of a defendant's sentence."). The issue identified by Petitioner did not involve uncharged conduct.

### E. The Analogue Act.

Petitioner's final objection is that the Analogue Act is unconstitutionally vague pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015), and his appellate counsel was ineffective for failing to appeal on this basis. Petitioner does not make a specific objection, but rather directs the Court to his opening and reply briefs. Doc. 24 at 14. The Court will not reevaluate the merits of this ground for relief in the absence of a specific objection to the R&R's analysis. *See Warling v. Ryan*, No. CV 12-01396-PHX-DGC, 2013 WL 5276367, at *2 (D. Ariz. Sept. 19, 2013); *Reyna-Tapia*, 328 F.3d at 1121.

**IT IS ORDERED:**

1. Magistrate Judge Charles R. Pyle's R&R (Doc. 23) is **accepted**.
2. The motion to vacate sentence (Doc. 1) is **denied**.
3. A certificate of appealability is **denied**.
4. The Clerk is directed to **terminate** this action.

Dated this 2nd day of April, 2018.

*David G. Campbell*
David G. Campbell
United States District Judge